KUNZA, by guardian *ad litem,* Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*October 6—October 26, 1909.*

*Railroads: Injury to employee riding on engine: Relation of parties: Line of duty: Contributory and comparative negligence: Questions for jury.*

1. Where, either by necessary implication or by the terms of his contract of service, a railway employee is required to travel on the trains of the company to or from the place or places of his

active duty, he is deemed to be in the service of his employer while so traveling, if he be in the proper place upon the train.

2. If such an employee knew or ought to have known that he had no right to ride on the engine, but voluntarily and without permission went there for his own purposes, he could not be considered as an employee while so riding, but as a trespasser, or at most a licensee.

3. Whether in this case the plaintiff, a pumper whose duties required him to ride back and forth daily on trains between pumping stations, and who was injured by a collision while riding on the engine, was justified in believing that he was entitled to ride on the engine if he chose to do so, is *held*, upon the evidence, to have been a question for the jury.

4. If in such case plaintiff believed and was justified in believing that he was entitled to ride on the engine while traveling between stations as his duties required, he was while so riding a servant of the railway company and "engaged in the line of his duty as such," within the meaning of subd. 2, sec. 1816, Stats. (Laws of 1907, ch. 254), even though he at times voluntarily or by request did firing for the engineer; and the jury should then determine whether he was guilty of contributory negligence in so riding instead of riding in the caboose as he might have done on the occasion in question, and, if so, whether such negligence was slighter or greater than the negligence of another employee which caused the collision.

SIEBECKER, J., dissents in part, being of the opinion that, upon the established facts, as matter of law the plaintiff had a right to ride on the engine and was not guilty of negligence in so doing.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Action for personal injuries. In 1907 and 1908 the defendant maintained gasoline pumping engines at two of its stations on the Ashland division, about fifteen miles apart, viz., Monico Junction and Summit Lake, for the purpose of supplying its tanks with water. In August, 1907, the plaintiff, a young man eighteen years of age, was employed to operate the two engines. The plaintiff lived at Summit Lake, and his duty was to go to Monico Junction daily and operate that engine half a day, and to return to Summit

Lake and operate that engine half a day. He was to receive $35 a month and transportation back and forth, and the company gave him a pass reading: "Pass one pumper, pump man on Ash. Div. bet. Summit Lake and Monico Jct. and Crandon until December 31st, 1908, subject to conditions on the back." The plaintiff performed his duties as pumper continuously from the time of his hiring until March 5, 1908, and rode back and forth daily on the trains of the company, sometimes riding on passenger trains, sometimes on regular freight trains, and sometimes on extra freight trains, as occasion served. When riding on freight trains he sometimes rode in the caboose, but generally in the cab of the engine with the engineer. While so riding he frequently acted as fireman, either of his own volition or at request of the engineer. He wished to become a fireman, and hence was glad to act as such. While so riding in the engine he was frequently seen by the various conductors, but no objection was ever made to his being so carried. A rule of the company forbade any person riding in the engine save the engineer and fireman without a permit from certain officials, but the plaintiff did not know of the rule.

On the evening of March 5, 1908, the plaintiff, having completed his pumping at Monico Junction for the day, boarded the engine of defendant's south-bound freight train at that place and rode southward until a head-end collision occurred with another freight train, caused by the negligent failure of a telegraph operator at Pelican station to deliver a train order. In this collision plaintiff was caught in the gangway between the engine and the tender and so badly injured that his leg had to be amputated. At the close of the evidence the trial judge directed a verdict for the defendant on these facts, and the plaintiff appeals.

For the appellant there were briefs by *Morson & McMahon*, attorneys, and *Kreutzer, Bird, Rosenberry & Okoneski*, of counsel, and oral argument by *S. J. McMahon* and *C. B. Bird*.

*William G. Wheeler,* for the respondent.

The following opinion was filed October 26, 1909:

WINSLOW, C. J. The respondent's first claim in support of the judgment is that as a matter of law the plaintiff, while riding upon the engine, was a trespasser. We cannot agree with this contention. The weight of authority is to the effect that had he been riding in the caboose or a passenger car he would have been a co-employee with the train crew and the telegraph operator. His contract for transportation was a part of his contract of service, and while being transported in the cars of the company in the necessary transaction of his duty as pumper he was as much in the service of the company as when he was engaged in operating one of the pumping engines. The authorities to this effect are quite numerous and fairly unanimous. They will be found collated in the opinion of Judge LURTON in *Louisville & N. R. Co. v. Stuber,* 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696. In order to perform his duties at the two stations the plaintiff was required to make the trips back and forth each day, and was expected and really obliged to make the trips on the cars of the company. He was serving the company as fully and completely while he was riding from one station to the other in order that he might operate the pump at the latter station as he was while he was actually operating the pump. In the case of *Ewald v. C. & N. W. R. Co.* 70 Wis. 420, 36 N. W. 12, 591, this court held that an engine wiper while going to his work over a customary pathway through the company's yard was actually engaged in the service of the company, so that the trainmen who were moving a freight train in the yard were his co-employees. In the opinion in this case many of the cases relied upon in the *Stuber Case* are cited and relied upon as sustaining the position of the court, and indeed there would seem to be no doubt that they are quite analogous. In brief,

the principle is that where, either by necessary implication or by the terms of his contract of service, a railway employee is required to travel on the trains of the company to or from the place or places of his active duty, he is deemed to be in the service of his employer while so traveling, if he be in the proper place upon the train.

So the initial question here is whether the plaintiff was riding in a proper place at the time he was hurt. If he knew, or ought under the circumstances to have known, that he had no right to ride in the engine cab, but voluntarily and without permission went there for his own purposes, doubtless he could not be considered an employee while so riding, but a trespasser, or at most a licensee. It is said that a passenger who chooses to ride on the engine instead of in the passenger car or caboose loses his character as a passenger and becomes a mere licensee, even when he does it by permission of the conductor. *Files v. B. & A. R. Co.* 149 Mass. 204, 21 N. E. 311. This court, however, has not so held. The case of *Leasum v. G. B. & W. R. R.* 138 Wis. 593, 120 N. W. 510, is somewhat analogous. In that case a stock owner, entitled by contract to ride on a freight train in charge of his stock, voluntarily rode in the car with his stock instead of in the caboose, and there was evidence tending to show that he did so with the knowledge and approval of the conductor and brakeman, and it was held that it was a jury question whether, under the circumstances, he was not justified in believing himself entitled to ride in the freight car.

Employees of the company frequently are expected and compelled to ride upon engines, freight cars, foot-boards, and ladders in order to successfully perform their duties. In the present case it was quite apparent that it was not . expected that the plaintiff should always wait for a passenger car or caboose to draw up by the side of his pump house before he made his trip from station to station. His prime

duty was to operate the pumps at each station daily, and in order to get from one post of duty to the other he was not expected to pick and choose his train, but take that which best served the purpose, whether it were passenger, regular freight, or extra freight; indeed, it appears that he sometimes rode in a light engine running alone.

The evidence shows, or tends to show, that the plaintiff's father, who held the same position immediately prior to the plaintiff's employment, was accustomed to ride on passenger cars, freight cabooses, or engines, as occasion served, to the knowledge of the plaintiff; that when the plaintiff went to work, at about eighteen years of age, he was given no instructions as to where he should ride; that he was not informed of any rule prohibiting employees from riding in the engine and knew nothing of such a rule; that immediately after he commenced his work he began to ride on the engines of freight trains with the consent and approval of the various engineers and with the knowledge of the conductors; that he frequently helped to fire the engine, either by request of the engineer or of his own volition; that this practice kept up continuously during his whole term of service without objection by any of defendant's officials; that it was sometimes necessary for the plaintiff, in order to ride on a freight train at all, to get on the engine, because when the caboose passed his pumphouse the train would be going too fast for him to board it; and that most of his riding back and forth was done on the engines of freight trains.

Under these circumstances we think it was a question for the jury to determine whether, considering all the facts surrounding his contract of service and his employment thereunder, the plaintiff was justified in believing that he was entitled to ride on the engine if he chose to do so. If the jury should so find, and further find that he did so believe at the time in question, we see no reason to doubt that the plaintiff, while so riding on the evening in question, was

legally in the employment of the defendant and in the line of his duty, notwithstanding the fact that he at times voluntarily or by request did firing for the engineer.

Should the jury answer these questions in the plaintiff's favor the fact would thereby be established that the plaintiff was a servant "engaged in the line of his duty as such" at the time of his injury within the meaning of subd. 2, sec. 1816, Stats. (1898), as amended by ch. 254, Laws of 1907, and the jury would then be required to determine whether the plaintiff was guilty of contributory negligence in riding in the engine as he did, instead of in the caboose as he might have done on the evening in question, and, if so, whether such negligence was slighter or greater than the negligence of the telegraph operator who failed to deliver or transmit the train order.

It is not deemed necessary to discuss at length the detail errors alleged. The foregoing discussion of the case quite clearly indicates the course which should be pursued when the retrial takes place.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

The following opinion was filed November 30, 1909:

SIEBECKER, J. (*concurring as to reversal but dissenting as to question for jury*). While I concur in the reversal I must dissent from the decision requiring submission of the question of plaintiff's contributory negligence to the jury.

The court holds that the contract of employment required the plaintiff to ride back and forth between the stations and to use the facilities provided by the railway company. His predecessor had customarily ridden on the engine. The officials of the company in charge of trains or engines and having authority to compel the plaintiff to ride in some particular place on a train not only permitted but invited him to ride on the engine. Under the employment particular

trains or any specific place on the trains had not been des-ignated for him in which to ride. It was proper for him to use a freight, passenger, extra, or whatsoever train would carry him between the stations, and under the circumstances the plaintiff practically was instructed to take the place on whatever transportation was provided by the company which would best suit his convenience. In the opinion of the court it is stated: "Employees of railway companies frequently are expected and compelled to ride upon engines, freight cars, foot-boards, and ladders in order to successfully perform their duties." In my opinion the facts of this case establish a con-tract between the parties which at times required the plaintiff to ride upon the engine. Under the circumstances and con-ditions of plaintiff's employment it results as a matter of law that the plaintiff was within his legal right in selecting the place on the engine on this trip, and in my opinion the jury should have been so instructed. This would eliminate all question of his contributory negligence as to the injury, for I take it that no claim of contributory negligence is made ex-cept that plaintiff was guilty of negligence in selecting the place on the engine for this particular trip. If the plaintiff was ordinarily or customarily lawfully riding on the engine, then he could not have been negligent in selecting it for this trip, and he was entitled to protection against the negligence attributable to the company.

These considerations lead me to the conclusion that, under the facts shown, the plaintiff could not be deemed guilty of negligence in riding on the engine, and the court should have so held. Under the evidence the question of the defendant's negligence and the amount of the plaintiff's damages were the only issues to be tried. *Lucas v. M. & St. P. R. Co.* 33 Wis. 41; *Eaton v. D., L. & W. R. Co.* 57 N. Y. 382; *Miller v. C., St. P., M. & O. R. Co.* 135 Wis. 247, 115 N. W. 794; *Leasum v. G. B. & W. R. R.* 138 Wis. 593, 120 N. W. 510; *L. R. & Ft. S. R. Co. v. Miles,* 40 Ark. 298.