WIESE, Respondent, vs. POLZER and another, Appellants:
WINTER, Impleaded Defendant and Appellant.

*March 9—September 12, 1933.*

338

For the appellants Polzer there were briefs by *Bender, Trump, McIntyre & Freeman* of Milwaukee, and oral argument by *Eugene L. McIntyre.*

For the impleaded defendant and appellant Winter there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Victor D. Werner* of counsel, all of Milwaukee, and oral argument by *Mr. Werner.*

The following opinion was filed April 11, 1933:

FOWLER, J. Counsel for the appellants raise many perplexing questions in their briefs. Counsel for the respondent present a brief of 160 pages in effort to meet the arguments presented in their support. In the view we take of the case, however, we need only consider whether the plaintiff was guilty of contributory negligence as matter of law, as the collision involved occurred prior to the enactment of the recent comparative negligence statute and contributory negligence is an absolute defense.

The plaintiff was negligent because in riding on the fender he violated sec. 85.085, Stats. 1927, which prohibits riding "on a fender, hood, running board or any outside portion of any automobile" while it is being operated on a highway, and imposes a penalty of five to five hundred dollars for its violation. This statute is a safety statute. It imposes on every person the absolute duty of obedience to it. By it the legislature has fixed the standard of care by which the conduct of all persons is measured. It covers the elements of want of ordinary care and reasonable anticipation of injury involved in actionable negligence. *Osborne v. Montgomery,* 203 Wis. 223, 240, 234 N. W. 372. Where the statute is violated no jury question can arise as to these elements. To paraphrase the language of Mr. Justice OWEN in *Edwards v. Kohn,* 207 Wis. 381, 385, 241 N. W. 331, in speaking of a like statute: juries will not be permitted to find a compliance with it by offending persons on the ground that they were exercising that degree of care that the great mass of mankind exercises under like circumstances.

It remains to be considered whether as matter of law the violation of the statute cited contributed to the plaintiff's

injuries. The respondent contends that to constitute riding on the fender contributory negligence the act must have operated to cause the collision. This contention cannot be upheld. It is of course true that in automobile collisions the driver's negligence must so operate, and the question is often submitted whether it did so operate, and such submission is correct. This is so for the reason that causing the collision necessarily causes the injuries. The ultimate fact is causation of the injuries, not causation of the collision, but as the former necessarily follows from the latter, there is no need to submit the former when the latter is found. The conclusion that taking the position that plaintiff took contributed to his injuries follows from many decisions of this court. In *Miller v. Chicago, St. P., M. & O. R. Co.* 135 Wis. 247, 115 N. W. 794, the plaintiff was riding on the platform of a railway car when there were seats inside. The train ran into a washout and the plaintiff was injured by being crushed between the car on which he was riding and the car ahead. Manifestly his riding on the platform had no causal connection with the washout or the train's running into it. Whether in the case cited the plaintiff was held guilty of contributory negligence as matter of law or as matter of fact is immaterial to the point under consideration. It may be that violation of a safety statute not being involved, whether the plaintiff in taking the position he took was negligent was a question for the jury, but that his taking such position contributed to the injuries received from being crushed between the two cars there can be no question. He certainly would not have been crushed between the two cars had he been riding inside the coach. The opinion in the cited case quotes from *Thane v. Scranton Traction Co.* 191 Pa. St. 249, 43 Atl. 136:

"The injury received . . . was the direct consequence of his position, and would not have been received had he been inside. Whether he would have received some other injury, equal or greater, is conjectural and irrelevant."

The idea that causation necessarily follows when injury results from the position assumed inheres in the decision of *Kunza v. Chicago & N. W. R. Co.* 140 Wis. 440, 123 N. W. 403. The plaintiff, an employee of the railway company, was riding in the engine cab and sustained injuries in a head-on collision with another engine. The trial court held him guilty of contributory negligence as a matter of law. The case was reversed for determination whether the plaintiff was justified in believing, under the circumstances in evidence, that he had a right to ride where he did. That if he did not have justification for so believing he was guilty of contributory negligence as matter of law was manifestly considered as correct. The *Miller Case, supra,* has been considered in *Engen v. Chippewa Valley R., L. & P. Co.* 162 Wis. 515, 156 N. W. 460, and *Bassett v. Milwaukee N. R. Co.* 169 Wis. 152, 170 N. W. 944, from both of which the inference necessarily follows that negligence being found in taking the position the plaintiff occupied, taking it constituted contributory negligence. All the cases, of which there is a multitude in the books, of persons injured while riding on the platform or steps of street cars or railway trains, negative the idea that to constitute contributory negligence the plaintiff's acts must contribute to the collision. The idea of all these cases is that if the plaintiff's position increased the hazard of injury and he was negligent or assumed the risk in taking his position, and injury resulted to him from his exposure, he is necessarily guilty of contributory negligence as matter of law. As said in *Jennings v. Delaney,* 229 App. Div. 439, 242 N. Y. Supp. 361, in reversing the trial court for submitting proximate causation to the jury, where a boy riding on the rear bumper of an automobile in violation of a city ordinance was injured when the car on which he was riding stopped at a traffic signal and a car following ran into it and injured him, so here: the plaintiff "placed himself in a position of

extreme danger. As a result of the hazard which he took, he received the injuries for which he seeks recovery. The situation is no different than any other case where a party puts himself in a position of danger realizing and appreciating the risk he is taking; . . . if injured, he has no cause of action for the negligence of another. . . . The contributory negligence of plaintiff was (not) at all remote but . . . was a direct proximate cause of the injuries he sustained."

Respondent's counsel claim that as the statute violated by the plaintiff only prohibits riding on the outside portion of automobiles, it does not apply to trucks. They contend that as the statutes deal with trucks as a separate class from passenger automobiles in certain sections, trucks are not automobiles within the meaning of the section involved. We cannot accept this view. By common understanding a truck is an automobile. Words in a statute are to be given their ordinary meaning. This seems so plain as not to need the citation of authority to support it. However, that automobile is a generic term, covering both trucks and passenger cars, see cases cited under the word in Words & Phrases, series 2, 3, and 4.

It is urged that the statement in the opinion in *Leckwe v. Ritter*, 207 Wis. 333, 337, 241 N. W. 339, in reference to sec. 85.44, Stats., that "We have grave doubts as to whether the legislature intended to require a pedestrian walking along a narrow one-track country highway to travel only along the left side thereof, with the incidental consequence that a pedestrian not so traveling would be guilty of a want of ordinary care as a matter of law even though run down by an automobile approaching from the rear,"—makes ordinary care of the pedestrian a question for the jury. This statement must be considered in connection with the facts involved in the case in which it was made. A country road might conceivably be so narrow that an automobile could

not pass a pedestrian without striking him whether he were on the left or the right of its center line. In such case the pedestrian would not be guilty of contributory negligence merely for not being to the left of the center, but the element lacking would be proximate causation rather than want of ordinary care. And it is doubtless true that a statute would not require a pedestrian to do the impossible, or to expose himself to one danger from ahead in order to avoid another danger from behind, as in the case of two automobiles meeting at the point of a pedestrian's position on the road where there was not room to pass without striking him in whatever position in the road he might be. But these situations are far removed from that in the instant case. We must adhere to the rule stated in the *Montgomery* and *Edwards Cases, supra,* that where a safety statute lays down a rule of conduct it establishes the standard of ordinary care and one who violates it cannot be heard to say that he exercised ordinary care or ought not to have anticipated injury from its violation, unless compliance is under the circumstances impossible or would subject him to other imminent and apparent dangers.

It is urged by respondent that the plaintiff is excused from violation of the statute because of the jury's finding that he did not voluntarily acquiesce in taking his position upon the fender. We consider that this finding is entirely unwarranted. The plaintiff was in possession of his faculties. His act in taking his position was certainly not involuntary. He was not compelled to ride on the fender. He was not requested to do so. No one suggested that he do so. Unquestionably there was room for him to ride inside the truck. The ride to the place of work was only a mile and he could have walked that distance without any great inconvenience. It is manifest that he took his position because he preferred it to walking or to riding in any position open to him inside the truck. To hold that riding on the fender was not a voluntary act of the plaintiff would

be mere quibbling and deny to the word "voluntary" its plain meaning. It would be juggling with the truth.

Appellants' counsel in discussing the matter of assumption of risk by the plaintiff criticize a statement in paragraph (5) of the opinion by the writer hereof in a case recently decided, *Cameron v. Union Automobile Ins. Co.* 210 Wis. 659, 246 N. W. 420, 247 N. W. 453. The statement as it appears in 246 N. W. at p. 423 is:

"That the deceased by riding with Funfar assumed the risk of injury sustained through his customary method of driving on the trip is doubtless true, but he did not by so riding assume the risk of injury caused by the negligence of users of the highway other than Funfar. The rule of assumption of risk as between host and guest does not apply as between a guest and third persons."

The criticism is just. The statement as it stands is incorrect. *Lynn v. Goodwin,* 170 Cal. 112, 148 Pac. 927; *Seaboard Air Line R. Co. v. Terrell,* 149 Va. 344, 141 S. E. 232; *Barnes & Bro. v. Eastin,* 190 Ky. 392, 227 S. W. 578. It was made without due consideration and we are grateful to counsel for giving us timely opportunity to correct it. The paragraph in the opinion is corrected by striking out the last sentence and adding to the first:

"unless the acts of Funfar in which the guest acquiesced operated as a cause of the collision, and they did not so operate in the instant case."

We believe that the above sufficiently covers the only issue of the case that there is occasion to consider.

We must hold that in riding upon the fender in violation of the statute cited the plaintiff was guilty of a want of ordinary care that proximately contributed to his injuries.

*By the Court.*—The judgment of the circuit court is reversed, with instructions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on September 12, 1933.